SEALED

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | **3-17 CR-224-D** |
| | CRIMINAL NO. |
| MOIZ MUMTAZ ALI | **UNDER SEAL** |

## INDICTMENT

The Grand Jury Charges:

## INTRODUCTION

1.    **Moiz Mumtaz Ali (Ali)**, the defendant herein, a resident of McKinney, Texas, operated, and managed Gateway Newsstands ("Gateway"), which was located at 700 North Pearl Street, Dallas Texas.  The business included a convenience and check cashing store and was registered as a money service business, with the ability to cash checks for customers and members of the general public.

2.    **Ali** was responsible for Gateway's check cashing operations.  **Ali** oversaw the day-to-day operations of the store, approved transactions, and maintained control of the business' bank accounts.

<u>Count One</u>
Conspiracy to Commit Bank Fraud
[Violation of 18 U.S.C. §§ 1349 (18 U.S.C. § 1344) and 2]

3.     Paragraphs 1 and 2 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

4.     Between in or about December 2010, and in or about June 2012, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Moiz Mumtaz Ali**, and others, knowingly, intentionally, and willfully combined, conspired, confederated and agreed with others, known and unknown to the Grand Jury, to commit bank fraud, that is to obtain money in the custody and control of Neighborhood Credit Union, whose deposits were insured by the National Credit Union Administration, by means of false and fraudulent pretenses and representations, in violation of 18 U.S.C. § 1349.

**Manner and Means of Conspiracy**

5.     It was part of the conspiracy that **Ali** and others devised a scheme to defraud Neighborhood Credit Union by negotiating fraudulently obtained United States Treasury checks, knowing that **Ali** and others were not entitled to the monetary amounts listed on the checks.

6.     Other co-conspirators of **Ali** filed false and fraudulent tax returns using the personal identifying information of legitimate tax payers without the tax payers' authorization.

7.     Once these fraudulent returns were submitted and approved by the Internal Revenue Service, co-conspirators received United States Treasury checks that represented the fraudulently obtained tax refunds.

8.     Co-conspirators brought these United States Treasury checks to **Ali** at the Gateway Newsstand, located at 700 North Pearl Street, Dallas Texas, which **Ali** managed.  The co-conspirators exchanged the United States Treasury checks with **Ali** for cash that represented a percentage of the stated amount of each check.

9.     Between in or about December 2010, and in or about June 2012, **Ali** negotiated and cashed approximately 3,423 United States Treasury checks totaling approximately $16,600,000.00.

### Overt Acts

10.     In furtherance of the conspiracy and to effect the objects thereof, **Ali**, along with others known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, in the Northern District of Texas, and elsewhere:

a.     On or about February 15, 2012, **Ali** provided a co-conspirator cash in exchange for a United States Treasury check in the amount of $4,094.00 that was made out to an individual known to the Grand Jury as A.C.M., even though, as **Ali** knew, the individual who presented the check to **Ali** was not A.C.M. and did not have A.C.M.'s permission or authority to cash or negotiate the check.  **Ali** then cashed the check at Neighborhood Credit Union for the full amount of the check, again without A.C.M.'s authority or permission.

b. On or about February 15, 2012, **Ali** provided a co-conspirator cash in exchange for a United States Treasury check in the amount of $8,840.00 that was made out to an individual known to the Grand Jury as C.D., even though, as **Ali** knew, the individual who presented the check to **Ali** was not C.D. and did not have C.D.'s permission or authority to cash or negotiate the check. **Ali** then cashed the check at Neighborhood Credit Union for the full amount of the check, again without C.D.'s authority or permission.

c. On or about April 18, 2012, **Ali** provided a co-conspirator cash in exchange for a United States Treasury check in the amount of $4,633.00 that was made out to an individual known to the Grand Jury as F.G., even though, as **Ali** knew, the individual who presented the check to **Ali** was not F.G. and did not have F.G's permission or authority to cash or negotiate the check. **Ali** then cashed the check at Neighborhood Credit Union for the full amount of the check, again without F.G.'s authority or permission.

d. On or about February 17, 2012, **Ali** provided a co-conspirator cash in exchange for a United States Treasury check in the amount of $7,948.00 that was made out to an individual known to the Grand Jury as H.M., even though, as **Ali** knew, the individual who presented the check to **Ali** was not H.M. and did not have H.M.'s permission or authority to cash or negotiate the check. **Ali** then cashed the check at Neighborhood Credit Union for the full amount of the check, again without H.M's authority or permission.

e. On or about February 17, 2012, **Ali** provided a co-conspirator cash in exchange for a United States Treasury check in the amount of $5,677.00 that was made out to an individual known to the Grand Jury as J.R., even though, as **Ali** knew, the individual who presented the check to **Ali** was not J.R. and did not have J.R.'s permission or authority to cash or negotiate the check.  **Ali** then cashed the check at Neighborhood Credit Union for the full amount of the check, again without J.R.'s authority or permission.

All in violation of 18 U.S.C. § 1349 and 2.

## Counts Two through Twenty-Seven
## Bank Fraud, Aiding and Abetting
[Violations of 18 U.S.C. §§ 1344 and 2]

11.     Paragraphs 1 through 10 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

12.     On or about the dates listed below, in the Dallas Division of the Northern District of Texas, the defendant, **Moiz Mumtaz Ali**, did knowingly devise and execute the foregoing scheme and artifice to defraud and to obtain money, funds, credits, assets, securities, and other property owned by, and under the custody or control of Neighborhood Credit Union, whose deposits were insured by the National Credit Union Administration, by means of materially false and fraudulent pretenses, representations, and promises, by cashing United States Treasury checks with the dates and amounts listed below, without the permission of or authority of the individual to whom the check was made out and who is listed below:

| Count | Date on Check | Check Made Out To: | Amount |
|---|---|---|---|
| 2 | 2/15/2012 | A.C.D. | $4,094.00 |
| 3 | 2/15/2012 | C.D. | $8.840.00 |
| 4 | 4/18/2012 | F.G. | $4,633.00 |
| 5 | 2/17/2012 | H.M. | $7,948.00 |
| 6 | 2/15/2012 | J.R | $5,677.00 |
| 7 | 2/27/2012 | J.G. | $6,270.00 |
| 8 | 2/15/2012 | J.A.B. | $7,006.00 |
| 9 | 2/27/2012 | J.E. | $5,388.00 |
| 10 | 2/29/2012 | J.B | $5,227.00 |
| 11 | 2/27/2012 | L.C. | $4,203.00 |
| 12 | 2/10/2012 | L.T. | $5,217.00 |
| 13 | 2/27/2012 | L.R. | $7,862.00 |
| 14 | 4/20/2012 | M.M. | $6,559.00 |
| 15 | 2/15/2012 | M.F. | $5,971.00 |
| 16 | 2/15/2012 | M.G. | $5,295.00 |
| 17 | 2/29/2012 | M.V. | $6,236.00 |

| 18 | 2/28/2012 | M.R. | $5,261.00 |
| 19 | 2/27/2012 | N.R.S | $8,283.00 |
| 20 | 2/28/2012 | P.F. | $7,072.00 |
| 21 | 2/27/2012 | P.D.P | $5,871.00 |
| 22 | 2/15/2012 | R.J. | $6,424.00 |
| 23 | 2/27/2012 | R.F.Z. | $4,035.00 |
| 24 | 2/17/2012 | S.H. | $6,732.00 |
| 25 | 2/25/2012 | S.V.R. | $4,517.00 |
| 26 | 2/29/2012 | V.P. | $5,006.00 |
| 27 | 2/17/2012 | W.C. | $7,895.00 |

All in violation of 18 U.S.C. § 1344 and 2.

Case 3:17-cr-00224-D   Document 1   Filed 04/19/17   Page 8 of 16   PageID 8

## Count Twenty-Eight
### Theft of Public Money and Property
[Violation of 18 U.S.C. § 641 and § 2]

13.     The allegations contained in paragraphs 1 through 9 are realleged and fully incorporated herein.

14.     Between in or about December 2010, and in or about June 2012, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Moiz Mumtaz Ali**, willfully and knowingly did embezzle, steal, purloin, and convert to his use and the use of another, and without authority did sell, convey, and dispose of a thing of value exceeding $1,000 of the United States and a department and agency thereof, to wit, **Ali** negotiated and cashed United States Treasury checks that had been issued and mailed to individuals other than **Ali** and to which **Ali** was not entitled, all in violation of 18 U.S.C. § 641.

Counts Twenty-Nine and Thirty
Aggravated Identity Theft
[Violation of 18 U.S.C. § 1028A)(a)(1)

15.    The allegations contained in paragraphs 1 through 11 are realleged and fully incorporated herein.

16.    On or about February 15, 2012, in the Dallas Division of Northern District of Texas and elsewhere, **Moiz Mumtaz Ali**, did knowingly transfer, possess, and use, without lawful authority, the means of identification of other persons, during and in relation to a federal felony, that is Conspiracy to Commit Bank Fraud and the Theft of Government Funds.    For each count below, the defendant, without authorization, possessed the name and personal identification information of each individual identified below:

| Count | Initials of Individual Whose Identity was Subject to Theft |
|:-----:|:----------------------------------------------------------:|
| 29    | A.C.D. |
| 30    | C.D. |

<u>Count Thirty-One</u>
Failure to Develop, Implement, and Maintain Anti-Money Laundering Program
[Violation of 31 U.S.C. § 5318(h) and § 31 U.S.C. 5322(a)]

17.     Between in or about December 2010, and in or about June 2012, in the Dallas Division of the Northern District of Texas and elsewhere, **Ali**, did willfully violate the Bank Secrecy Act ("BSA"), and regulations thereunder, namely, Title 31 Code of Federal Regulations, Section 1022.210, by failing to develop, implement, and maintain an effective anti-money laundering program at Gateway Newsstands, a domestic financial institution and money service business.

18.     During such time period, **Ali** knowingly and willfully failed to implement and maintain effective policies, procedures, and internal controls for (a) verifying customer information, in particular with regard to customers who came to Gateway seeking to cash United States Treasury checks issued to individuals with addresses outside the State of Texas, (b) filing reports of these transactions, and (c) creating and retaining records.

19.     Specifically, and among other acts and omissions, **Ali** did the following:

a.     Between in or about December 2010, and in or about June 2012, **Ali** negotiated and cashed approximately 3,423 United States Treasury checks totaling approximately $16,600,000.00.   The vast majority of the checks were addressed to individuals with out-of-state addresses. Most of the checks had been obtained through fraud, either because the checks were based on fraudulent federal tax returns or because the checks had been stolen.

b.      **Ali** routinely failed to require and/or retain copies of any identification documents applicable to the party cashing the Treasury checks or to the payees whose names were on the Treasury checks he accepted and cashed.  In those very limited instances in which **Ali** purportedly required identification and retained a copy of such identification, **Ali** failed to take any steps to verify whether the identification document was false, fictitious, or counterfeit.

c.      For the relevant time period, **Ali** had no written policies, procedures, and controls in place whatsoever regarding money laundering, customer identification, the filing of reports as required by law, the creation and retention records, and responses to law enforcement requests.

d.      The conduct described above violated the BSA, codified at Title 31, United States Code, Sections 5313-5326, which was a set of laws enacted by Congress to address an increase in criminal money laundering through financial institutions. Check cashers, for instance, were a common venue for individuals who wanted to cash large numbers of checks anonymously to facilitate fraud and money laundering schemes. Individuals engaged in such criminal conduct commonly converted the proceeds of their fraud into cash by taking checks to specific check cashers they knew would not ask for proof of the payees' identities or inquire into the circumstances surrounding the checks.

e.      Accordingly, among other provisions, the BSA required each check casher to develop, implement, and maintain an effective anti-money laundering program reasonably designed to prevent the check casher from being used to facilitate money laundering.  The program was required to have written policies, procedures, and controls

governing the verification of customer identification, the filing of reports as required by law, the creation and retention of records, and responses to law enforcement requests.

        f.      As described above, **Ali** failed to follow these requirements and took no steps to prevent his store from being used to facilitate criminal activity and launder money.

The above is a violation of Title 31, United States Code, Sections 5318(h) and 5322(a).

Forfeiture Notice
[18 U.S.C. § 981(a)(1)(C)]
[18 U.S.C. § 982(a)(2)]
[28 U.S.C. § 2461(c)]

20.     Upon the conviction of the Defendant for any of the offenses alleged in Counts 1 through 30 of this Indictment, the following property shall be forfeited to the United States: all property, real and personal, which constitutes or is derived from proceeds traceable to such violations.

If any of the property described above, as a result of any act or omission of the Defendant:

a)  cannot be located upon the exercise of due diligence;

b)  has been transferred or sold to, or deposited with, a third party;

c)  has been placed beyond the jurisdiction of the court;

d)  has been substantially diminished in value; or

e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(P), to seek forfeiture of any other property of the Defendant up to the value of the property subject to forfeiture.

A TRUE BILL

FOREPERSON

JOHN R. PARKER
UNITED STATES ATTORNEY

P.J. MEITL
Assistant United States Attorney
District of Columbia Bar No. 502391
Virginia Bar No. 73215
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8680
Facsimile: 214.659.8812
Email: philip.meitl@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

THE UNITED STATES OF AMERICA

v.

MOIZ MUMTAZ ALI

---

INDICTMENT

18 U.S.C. §§ 1349 (18 U.S.C. § 1344) and 2
Conspiracy to Commit Bank Fraud

18 U.S.C. §§ 1344 and 2
Bank Fraud, Aiding and Abetting

18 U.S.C. § 641 and § 2
Theft of Public Money and Property

18 U.S.C. § 1028(A)(a)(1)
Aggravated Identity Theft

31 U.S.C. § 5318(h) and § 31 U.S.C. 5322(a)
Failure to Develop, Implement, and Maintain Anti-Money Laundering Program

18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2), 28 U.S.C. § 2461(c)
Forfeiture Notice

31 Counts

---

A true bill rendered

DALLAS _____                                                    FOREPERSON

Filed in open court this 18th day of April, 2017.
                                19

**Warrant to be Issued**

_____
UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending